**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BETH MCKELVIE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BOSCOV'S, INC. and BOSCOV'S DEPARTMENT STORES, LLC d/b/a BOSCOV'S, <br><br> Defendants. | Case No.  5:22-cv-00281 |

**NATIONWIDE CLASS ACTION COMPLAINT**

Plaintiff Beth McKelvie ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Boscov's, Inc. and Boscov's Department Stores, LLC, doing business as Boscov's ("Defendants"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, and its implementing regulations (the "ADA"), for declaratory and injunctive relief, attorneys' fees, expenses, and costs pursuant to 42 U.S.C. §§ 12181 *et seq.*, and nominal damages.

**INTRODUCTION**

1.      This is a case about putting profit ahead of the rights of people with disabilities.

2.      Defendants position a host of obstructions including but not limited to merchandise displays, clothing racks, tables, boxes, and/or other items so that they block or narrow the aisle pathways of their stores.

3.      Upon information and belief, this practice is driven by a calculated judgment that impeding interior paths of travel increases sales revenue and profits. *See, e.g., Stuff Piled in the*

*Aisle? It's there to Get You to Spend More*, The New York Times (April 7, 2011)[1]; *see also, Why a Messy, Cluttered Store is Good For Business*, Time Magazine (April 8, 2011).[2]

4.      Although this practice may increase profits, it does so at the expense of basic civil rights guaranteed to people with disabilities by the ADA because it results in unlawful access barriers.

5.      Plaintiff, at all times relevant hereto, has suffered from a legal mobility disability as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiff is therefore a member of the protected class under the ADA, and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

6.      Plaintiff has regularly visited Defendants' stores and has been repeatedly denied full and equal access to the stores as a result of accessibility barriers existing in interior paths of travel. These access barriers include but are not limited to: merchandise displays, clothing racks, boxes, signs, and/or other items, positioned so that they impermissibly block or narrow the aisle pathways. These conditions violate the ADA and deny Plaintiff's equal access to the goods and services offered at Defendants' stores.

7.      The access barriers described herein are not temporary and isolated. They are systemic, recurring, and reflective of Defendants' marketing and store policies and practices. Plaintiff has encountered the same barriers on multiple occasions and has been repeatedly deterred from accessing Defendants' goods and services as a result.

---

[1] Available at https://www.nytimes.com/2011/04/08/business/08clutter.html as of January 20, 2022.

[2] Available at https://business.time.com/2011/04/08/why-a-messy-cluttered-store-is-good-for-business/ as of January 20, 2022.

8.     Counsel for Plaintiff has overseen an investigation into Defendants' stores which has confirmed the widespread existence of interior access barriers that are the same as, or similar to, the barriers directly experienced by Plaintiff.

9.     Unless Defendants are required to remove the access barriers described herein, and required to change their policies and practices so that these access barriers do not reoccur at Defendants' stores, Plaintiff and the proposed Class will continue to be denied full and equal access to the stores and will be deterred from fully using Defendants' stores.

10.     In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

a.     Defendants remediate all interior path of travel barriers at Defendants' stores, consistent with the ADA;

b.     Defendants change their policies and practices so that the interior paths of travel access barriers at Defendants' stores do not reoccur; and

c.     Plaintiff's representatives shall monitor Defendants' stores to ensure that the injunctive relief ordered pursuant to this Complaint has been implemented and will remain in place.

11.     Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . . . Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA'S CLEAR AND COMPREHENSIVE MANDATE

12.     The ADA was enacted over a quarter-century ago and was intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

13.     The ADA is the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. Like other civil rights laws, the purpose of the ADA is clear: the eradication of discrimination. As one legal scholar explained: "A single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people." Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

14.     The Supplementary Information to 28 C.F.R. § 36 explains, among other things: "Some of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities."

15.     Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns,

leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). It prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in the goods or services offered by a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

16.     Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); or from affording goods, services, facilities, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); or from providing goods, services, facilities, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)).

### THE ADA AND THE RIGHT OF NON-DISCRIMINATORY ACCESS TO GOODS

17.     The ADA specifically prioritizes "measures to provide access to those areas where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks, rearranging tables . . . ." 28 C.F.R. § 36.304.

18.     The ADA and its implementing regulations define prohibited discrimination to include the following: (a) the failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv); (b) the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1); (c) for alterations to public accommodations made after January 26, 1992, the failure to make

alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and (d) the failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

19.    To be "readily accessible" under Title III of the ADA, merchandise on fixed aisle shelving in a retail store such as Boscov's must be located on an accessible route. The Department of Justice, pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical structural requirements that a public accommodation must meet in order to be "readily accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. C ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

20.    The applicable "accessible route" standards are set forth in the 2010 Standards at Section 403.5.1. *See also* ADA Guide for Small Businesses (June 1999), available at https://www.ada.gov/smbustxt.htm (noting that "when sales items are displayed or stored on shelves for selection by customers, the store must provide an accessible route to fixed shelves and displays, if doing so is readily achievable."). ADA Figure 403.5.1 explains that an accessible route must be a minimum of 36 inches, but can be reduced to 32 inches for a length of no more than 24 inches, such as at doors, so long as the 32 inch segments are at least 48 inches apart. *See* ADA Figure 403.5.1, available at https://www.access-board.gov/aba/chapter/ch04/.

21.    The "accessible route" standards set forth in the 1991 Standards have a similar requirement of 36 inches, which can be reduced to 32 inches for no more than 24 inches. *See* ADA Figure 1, available at https://www.access-board.gov/adaag-1991-2002.html.

22.    The ADA requires places of public accommodations to design and construct facilities to be independently usable by individuals with disabilities. 42 U.S.C. § 12183(a)(1).

23.    The ADA further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of disability. 42 U.S.C. § 12182(b)(1)(D).

24.    The ADA further requires Defendants to provide individuals who use wheelchairs or scooters full and equal enjoyment of their facilities. 42 U.S.C. § 12182(a).

25.    When discriminatory architectural conditions exist within a public accommodation's facility, the ADA directs that a "public accommodation shall remove architectural barriers in existing facilities . . . where such removal is readily achievable, *i.e.*, easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(b) (emphasis added); *see also* 42 U.S.C. § 12182(b)(2)(A)(iv) (the failure to remove architectural barriers, where such removal is readily achievable, constitutes discrimination).

26.    The obligation to remove access barriers applies equally to non-fixed obstructions, such as boxes and display racks, and the Department of Justice has specifically and repeatedly emphasized this obligation to public accommodations in ADA guidance documents:

> A common problem observed by the Department is that covered facilities do not maintain accessible routes. For example, the accessible routes in offices or stores are commonly obstructed by boxes, potted plants, display racks, or other items so that the routes are inaccessible to people who use wheelchairs. Under the ADA, the accessible route must be maintained and, therefore, these items are required to be removed.

Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 73 Fed. Reg. 34508-01, 34523 (June 17, 2008).

27.    In addition to tangible barrier removal requirements as well as physical design, construction, and alteration requirements, the ADA requires reasonable modifications in policies,

practices, or procedures when necessary to afford goods, services, facilities, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

28.     The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. § 12188(a)(1).

29.     The access barriers described herein demonstrate that Defendants' facilities are not altered, designed, and/or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs or scooters and/or that Defendants' facilities are not maintained so as to ensure that they remained accessible to and usable by individuals who use wheelchairs or scooters.

30.     Defendants' repeated and systemic practices herein described constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

## JURISDICTION AND VENUE

31.     This court has federal jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

32.     Defendants do substantial business in this judicial district and are headquartered in this judicial district.

33.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(1) in that Defendant resides in this judicial district.

## PARTIES

34.     Plaintiff Beth McKelvie is, and at all times relevant hereto was, a resident of Lebanon, Pennsylvania.

35.     Plaintiff, as a result of an automobile accident, has a mobility disability, and uses a wheelchair for mobility. She is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

36.     Defendant Boscov's Department Stores, LLC is a Delaware limited liability company registered with the Commonwealth of Pennsylvania and with a principal place of business identified at 4500 Perkiomen Avenue, Reading, Pennsylvania 19606.

37.     Defendant Boscov's, Inc. is a Pennsylvania corporation with its principal place of business at 4500 Perkiomen Avenue, Reading, Pennsylvania 19606, and is the parent company of Defendant Boscov's Department Stores, LLC.

38.     Defendants' stores are places of public accommodation pursuant to 42 U.S.C. § 12181(7).

## FACTUAL ALLEGATIONS AND PLAINTIFF'S EXPERIENCE

**I.     Plaintiff has been denied Full and Equal Access to Defendants' Facilities.**

39.     Plaintiff resides in Lebanon, Pennsylvania approximately five miles from Defendants' facility located at 2201 Lebanon Valley Mall, Lebanon, Pennsylvania 17042 (the "Lebanon Valley Store"). It is approximately a fifteen-minute drive from Plaintiff's residence to Defendants' Lebanon Valley Store.

40.     Plaintiff has often shopped at Defendants' Lebanon Valley Store, including as recently as November 2021. Plaintiff usually visits Defendants' Lebanon Valley Store when she goes shopping at the Lebanon Valley Mall. During her frequent visits to the Lebanon Valley Store,

she has repeatedly encountered interior access barriers within and throughout Defendants' Lebanon Valley Store, including but not limited to merchandise, such as merchandise displays, clothing racks, boxes, signs, and other items, which have precluded Plaintiff's equal access to Defendants' goods and services in violation of the ADA's equal access mandate, generally, and the requirements of the 2010 Standards Section 403.5.1 and/or the 1991 Standards Section 4.2.1 and 4.3.3. Plaintiff would shop at Defendants' Lebanon Valley Store more often, and with less difficulty, if the interior access barriers are removed.

41. Defendants' Lebanon Valley store is cluttered with merchandise and merchandise displays throughout, hindering Plaintiff's ability to navigate through Defendants' store.

42. The following photographs, among others, were taken by an investigator on Plaintiff's behalf at the Lebanon Valley Store:



Figure 1 - Boscov's, 2201 Lebanon Valley Mall



Figure 2 - Boscov's, 2201 Lebanon Valley Mall



Figure 3 - Boscov's, 2201 Lebanon Valley Mall



Figure 4 - Boscov's, 2201 Lebanon Valley Mall



Figure 5 - Boscov's, 2201 Lebanon Valley Mall

43.      Given the access barriers contained within Defendants' stores, Plaintiff is deterred and continues to be deterred from returning to Defendants' stores.

44.      In addition to examining the Lebanon Valley Store, Plaintiff's Investigator examined additional locations and determined the same problems existed that were present at the Lebanon Valley Store, as depicted in the following images:

15

a)   101 Clearview Circle, Butler, Pennsylvania 16001



Figure 6 - Boscov's, 101 Clearview Circle



Figure 7 - Boscov's, 101 Clearview Circle

b)  139 Falon Lane, Altoona, Pennsylvania 16602



Figure 8 - Boscov's, 139 Falon Lane



Figure 9 - Boscov's, 139 Falon Lane

c)  400 Beaver Valley Mall Boulevard, Monaca, Pennsylvania 15061



Figure 10 - Boscov's, 400 Beaver Valley Mall Boulevard



Figure 11 - Boscov's, 400 Beaver Valley Mall Boulevard

d)  570 Galleria Drive, Johnstown, Pennsylvania 15904



Figure 12 - Boscov's, 570 Galleria Drive



Figure 13 - Boscov's, 570 Galleria Drive

e)   5320 Youngstown Warren Road, Niles, Ohio 44446



Figure 14 - Boscov's, 5320 Youngstown Warren Road



Figure 15 - Boscov's, 5320 Youngstown Warren Road

f)   67800 Mall Road, St. Clairsville, Ohio 43950



Figure 16 - Boscov's, 67800 Mall Road



Figure 17 - Boscov's, 67800 Mall Road

45.     The barriers depicted above illustrate some, but not all, of the types of interior access barriers at Defendants' stores. Collectively, these barriers impeded Plaintiff's access to goods and services at Defendants' stores.

46.     As a result of Defendants' non-compliance with the ADA, Plaintiff's rights to full and equal, non-discriminatory, and safe access to Defendants' goods and facilities have been denied.

47.     Plaintiff has been and will be deterred from returning to and fully and safely accessing Defendants' facilities so long as Defendants' facilities remain non-compliant, and so long as Defendants continue to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendants' facilities.

48.     Nonetheless, Plaintiff has visited and will continue to visit Defendants' stores, both in an attempt to access goods and services in those stores and to survey the stores for compliance with the ADA.

49.     Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendants' facilities in violation of her rights under the ADA.

50.     As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendants' facilities, have access barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

## II.     Defendants Deny Individuals with Disabilities Full and Equal Access to Their Facilities

51.     Defendants are engaged in the ownership, management, operation, and development of retail stores throughout the northeastern United States that sell a variety of products ranging from travel packages to furniture to clothing, including, upon information and

belief, approximately 50 stores in eight states (Pennsylvania (26), New Jersey (8), Maryland (4), New York (4), Delaware (3), Ohio (2), Connecticut (2), and Rhode Island (1)).

52.     As the owner, operator, and/or manager of their properties, Defendants employ centralized policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of their facilities.

53.     However, as set forth herein, these policies, practices, and procedures are inadequate in that Defendants' facilities are operated and maintained in violation of the accessibility requirements of Title III of the ADA.

54.     As evidenced by the widespread inaccessibility of Defendants' stores visited by Plaintiff and Plaintiff's Investigator, absent a change in Defendants' corporate policies and practices, access barriers are likely to reoccur in Defendants' facilities even after they have been remediated in the first instance.

55.     Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendants' facilities and an injunction to modify the policies and practices that have created or allowed, and will create or allow, access barriers in Defendants' stores.

## CLASS ALLEGATIONS

56.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) individually and on behalf of the following classes:

a.   <u>Nationwide Class:</u> All persons with qualified mobility disabilities who have attempted, or will attempt, to access the interior of any store owned or operated by Defendants within the United States and have, or will have, experienced access barriers in interior paths of travel.

b.   <u>Pennsylvania Class:</u> All persons with qualified mobility disabilities who have attempted, or will attempt, to access the interior of any store owned or operated by Defendants within Pennsylvania and have, or will have, experienced access barriers in interior paths of travel.

57. **Numerosity:** The classes described above are so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

58. **Typicality:** Plaintiff's claims are typical of the claims of the members of the classes. The claims of Plaintiff and members of the classes are based on the same legal theories and arise from the same unlawful conduct.

59. **Common Questions of Fact and Law:** There is a well-defined community of interest and common questions of fact and law affecting members of the classes in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described. The questions of law and fact that are common to the classes include:

   a. Whether Defendants operate places of public accommodation and are subject to Title III of the ADA and its implementing regulations;

   b. Whether storing merchandise in interior aisles of the stores makes stores inaccessible to Plaintiff and Putative class members; and

   c. Whether the Defendants' storage, stocking, and setup policies and practices discriminate against Plaintiff and putative class members in violation of Title III of the ADA and its implementing regulations.

60. **Adequacy of Representation:** Plaintiff is an adequate representative of the classes because her interests do not conflict with the interests of the members of the classes. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the classes and has no interests antagonistic to the members of the classes. Plaintiff has retained counsel who

are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

61.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the classes, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the classes as a whole.

## CAUSE OF ACTION: VIOLATION OF THE ADA

62.     Defendants have failed, and continue to fail, to provide individuals who use wheelchairs or scooters with full and equal enjoyment of their facilities.

63.     Defendants have discriminated against Plaintiff and the classes in that Defendants have failed to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs or scooters in violation of 42 U.S.C. § 12182(a) as described above; Section 403.5.1 of the 2010 Standards and/or Sections 4.2.1 and 4.3.3 of the 1991 Standards.

64.     Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

65.     Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the classes.

66.     Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs or scooters, Plaintiff invokes her statutory rights to declaratory and injunctive relief, and costs and attorneys' fees, as well as nominal damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the classes, prays

for:

a.  A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA, and the relevant implementing regulations of the ADA, in that Defendants' facilities are not fully accessible to and independently usable by individuals who use wheelchairs or scooters;

b.  A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that: (i) directs Defendants to take all steps necessary to remove the access barriers described above and to bring their facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs, scooters or other mobility devices; (ii) directs Defendants to change their policies and practices to prevent the reoccurrence of access barriers post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place;

c.  An Order certifying the classes proposed by Plaintiff, naming Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

d.  Payment of the costs of suit;

e.  Payment of nominal damages, as the Court deems proper;

f.  Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

g.  The provision of whatever other relief the Court deems just, equitable, and appropriate.


Dated: January 21, 2022                    Respectfully Submitted,


                                           */s/ Gary F. Lynch*
                                           Gary F. Lynch
                                           Nicholas A. Colella
                                           James M. LaMarca
                                           **LYNCH CARPENTER, LLP**
                                           1133 Penn Avenue, 5th Floor
                                           Pittsburgh, PA 15222
                                           Phone: (412) 322.9243
                                           Gary@lcllp.com

nickc@lcllp.com
james@lcllp.com

R. Bruce Carlson
Ian M. Brown
**CARLSON BROWN**
222 Broad St.
PO Box 242
Sewickley, PA 15143
bcarlson@carlsonbrownlaw.com
ibrown@carlsonbrownlaw.com
724-730-1753

*Counsel for Plaintiff*